IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUNFLOWER BANK, N.A.,

    Plaintiff,

vs.                              Case No. 11-1104-JTM

RICHARD J. LUND; MARY ANN LUND; DENNIS
M. MASTRO; JANE MASTRO; MICHAEL D.
MASTRO; BRENDA L. MASTRO; JEFFREY J.
MASTRO; JODI L. MASTRO; DAVID R.
SELLERS; SCOTT A. TROILO; PATRICIA
SELLERS; AND LGE CORPORATION,

    Defendants.

MEMORANDUM AND ORDER

This matter is before the court on the plaintiff Sunflower Bank's Motion for Temporary Restraining Order and for Preliminary Injunction (Dkt. 3). In its Complaint, Sunflower alleges that the defendants are liable under a Promissory Note and various Guaranties issued in connection with an Arizona real estate development project. In its Motion, Sunflower seeks an Order barring the defendants from further prosecution of an action which they recently began in Arizona state court, *Mastro v. Sunflower Bank*, No. CV2011-008133 (Maricopa County Dist. Ct., April 7, 2011). On April 15, 2011, this court heard argument relating to Sunflower's request for a Temporary

Restraining Order, and for the reasons stated at the hearing and as stated herein, the request is hereby denied.[1]

For purposes of the present Order only, the court accepts as true the factual contentions presented in Sunflower's Motion, and the same are incorporated herein. (Dkt. 3-1, at 1-8, ¶¶ 1-48). Those facts establish that, to further the Arizona the development project, the defendants on December 13, 2007 voluntarily undertook loan and guaranty agreements with First National Bank of Olathe (FNBO). The individual defendant guarantors are participants in Dove Valley Scottsdale, LLC, the entity which undertook oversight of the development. As a result of these agreements, FNBO loaned Dove Valley $9.1 million.

After FNBO partially transferred interest in the loan to Sunflower Bank, and prior to the Note's maturity, the defendants entered into a May 7, 2010 extension and renewal agreement, under which Sunflower became the sole owner of the Note and the Individual Guaranties. During the course of these agreements and negotiations, the individual defendants actively solicited business in Kansas, sending various communications to Sunflower at its office in Salina, Kansas. These communications included numerous documents, including financial statements, tax returns, development plans, drawings, budgets, and photos. During the course of both the initial 2007 Note and the new Note issued in 2010, the defendants made payments to FNBO and Sunflower in Kansas.

Paragraph 19 of the Promissory Note provides:

**Applicable Law.** This Note is governed by the laws of Kansas, the United States of America, and to the extent required, by the laws of the jurisdiction where the

---

[1] The defendants made special appearances during the court's hearing for the purpose of opposing the Motion for Injunctive Relief. The court approved their appearance for this limited purpose, and finds that these defendants have reserved the right to challenge the personal jurisdiction of the court.

> Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Kansas, unless otherwise required by law.

In addition, the individual Guarantors stated in their agreements that they "absolutely and unconditionally agree to all terms of ... each and every Debt," with "Debt" being further specifically defined to include the original Note.

The defendants have subsequently defaulted on the agreements in various respects, and Sunflower has brought the present action to collect for outstanding loan amounts under the Note and the Guaranty Agreements. (Dkt. 1, at 8-11). In the present motion for injunctive relief, Sunflower seeks an order enjoining the defendants, along with "their officers, agents, employees, and attorneys, and all those in active concert or participation with them, from continuing prosecution of claims" in the Arizona action "until a final hearing and determination of the merits in this action." (Dkt. 3, at 1). In its Brief, Sunflower states:

> The purpose of the Motion is to request that this Court enjoin Defendants from seeking to adjudicate issues relating to this case, or from collaterally attacking these issues, in the Arizona Case during the pendency of this case. Plaintiff does not seek to enjoin Defendants from challenging this Court's jurisdiction or to continue to pursue claims they may have against one another in the Arizona case; rather, Plaintiff seeks a determination that this Court's jurisdiction must be challenged, if at all, within the instant action filed by Plaintiff.

(Dkt. 3-1, at 10).

Almost the entirety of the argument portion of Sunflower's brief (*id*. 10-24) is directed at establishing that Kansas venue is both proper and exclusive. But all of this merely establishes that this court has jurisdiction to resolve the dispute, not that the court can or should grant injunctive relief preventing further state court proceedings in Arizona. Indeed, Sunflower addresses the standard elements quite literally as an afterthought, stating simply in the Conclusion portion of its

3

brief that "[i]f Plaintiff is not afforded the requested injunctive relief, it will suffer irreparable harm by having to incur unnecessary legal expenses, not to mention personal time investments of its agents and employees, pursuing any claims in Arizona." (Dkt. 3-1, at 26).

But even if Sunflower had set forth fully and adequately the essential elements of injunctive relief, the court would nevertheless be required to deny its motion. Congress has specifically restricted the ability of federal courts to enjoin state court actions in the Anti-Injunction Act, 28 U.S.C. § 2283. "The historical legacy and the prevailing policy against federal court intervention in state court proceedings are well documented." *Brown v. McCormick*, 608 F.2d 410, 415-16 (10th Cir. 1979) (citing cases).

28 U.S.C. § 2283 provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Supreme Court has held that the statute prohibits federal courts from enjoining state actions on any basis other than the three enumerated exceptions. In *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286-287 (1970), the Court wrote:

> On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. The respondents here have intimated that the Act only establishes a [sic] 'principles of comity,' not a binding rule on the power of the federal courts. The argument implies that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions. We cannot accept any such contention. In 1955 when this Court interpreted this statute, it stated: 'This is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clearcut prohibition qualified only by specifically defined exceptions.' *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515-516, 75 S.Ct. 452, 455, 99 L.Ed. 600 (1955). Since that time Congress has not seen fit to amend the statute and we therefore adhere to that position and hold that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the

4

specific statutory exceptions to § 2283 if it is to be upheld. Moreover since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction. Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.

The Court in *Atlantic Coast Line* proceeded to hold that the only statutory exception potentially relevant here, that for an injunction in aid of the federal court's jurisdiction, is not broad. The exception, the Court held, should be construed narrowly, in a manner similar to that of the third exception:

> First, a federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. This rule applies regardless of whether the federal court itself has jurisdiction over the controversy.... Second, if the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction. While this language is admittedly broad, we conclude that it implies something similar to the concept of injunctions to 'protect or effectuate' judgments. Both exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.... Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the Florida appellate courts and ultimately, if necessary, in this Court.

*Id*. at 294-96 (citations omitted). *See also See Mitchum v. Foster*, 407 U.S. 225, 228–29, 92 S.Ct. 2151, 2154–55, 32 L.Ed.2d 705 (1972); *Phelps v. Hamilton*, 122 F.3d 1309, 1324-25 (10th Cir. 1997) (in the absence of one of the three enumerated exceptions, § 2283 "imposes an absolute ban on federal injunctions against pending state court proceeding").

Thus, it is not sufficient to show that a parallel state action exists, even if the federal court otherwise has exclusive jurisdiction over the case. *Greater Continental Corp. v. Schechter*, 304 F.Supp. 325 (S.D.N.Y. 1969), *app. dismissed*, 422 F.2d 1100 (2d Cir. 1970). Rather, this second exception applies in a very limited number of cases. For example, pursuant to this exception, a federal court to which a case has been removed from state court may stay additional proceedings in the state court case after removal. Or an injunction may be granted in cases of *in rem* actions, where both federal and state claims are directed at a given *res*. *Hyde Const. v. Koehring Co.*, 388 F.2d 501, 508 (10th Cir.), *cert. denied*, 391 U.S. 905 (1968). If both federal and state actions are *in personam*, "the actions may proceed simultaneously, and the federal court may not enjoin the state proceeding." *Id.*[2] *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977).

The determination of whether a requested injunction is necessary in aid of its jurisdiction is committed to the discretion of the court. *Ambiance, Inc., v. Commodore Gen. Ins.*, 553 F.Supp. 285 (S.D.N.Y. 1982). Any doubts about the propiety of entering injunction under the Anti-Injunction Act should be resolved against injunctive relief. *Atlantic Cost Line*, 398 U.S. at 297.

In *Bank of Oklahoma v. Tharaldson Motels II*, 743 F.Supp.2d 1080 (D.N.D. 2010), the court held that the Anti-Injunction Act precluded the plaintiff bank's request for a injunction seeking to prevent further Nevada state court litigation by a guarantor. The court found it "well-settled" that such disputes "do not justify invocation of the exceptions of the Anti–Injunction Act." *Id*. at 1084.

---

[2] The association of the second § 2283 exception with *in rem* is strong enough that the exception itself is frequently referred to "as the 'in rem' exception," just as the third is known as "the 'relitigation' exception." *Kansas Pub. Empl. Ret. Sys. v. Reimer & Koger Assocs.*, 77 F.3d 1063, 1068 n. 4 (8th Cir. 1996).

This result was true even though the guaranty had a forum selection clause providing that North Dakota was the exclusive venue for litigation.

> The possibility that the Nevada state court could decide whether the guaranty is enforceable is not enough to invoke the "necessary in aid of its jurisdiction" exception. Several federal district courts have found the Anti–Injunction Act precludes ordering an injunction against continuing state court litigation where enforceability of forum and venue selection clauses were at issue. *See Great Lakes Dredge & Dock Co., LLC v. Larrisquitu*, Civil Action Nos. H–06–3489, H-06-3669, H–06–4040, 2007 WL 2330187 (S.D.Tex. Aug. 15, 2007) (unpublished) (finding that no exceptions to the Anti-Injunction Act applied where enforceability of forum selection clause was at issue); *Northfield Ins. Co. v. Odom Indus., Inc.*, 119 F.Supp.2d 631 (S.D.Miss.2000) (finding the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act did not apply even though a federal forum selection clause existed); *Bridgeport Machs., Inc. v. Alamo Iron Works, Inc.*, 76 F.Supp.2d 209 (D.Conn.1999) (finding that even though the Texas state court action may have been brought improperly in a Texas venue based on the parties' forum selection clause or that Connecticut law should apply does not bring this case within any exception to the Anti–Injunction Act without any substantive ruling or judgment yet by the federal court).

*Id.* at 1083-84. See *also National Union Fire Insurance v. Turbi de Angustia*, No. 05-2068, 2005 WL 2044930, * (S.D.N.Y. Aug. 23, 2005) ("even if it should disagree with an assessment by the Texas court" that a forum selection clause was not binding, the federal court "lacks the power to put a stop to the claims against National Union in the Texas Action in the interim, before a judgment on the merits is reached in the present case").

In its motion, Sunflower makes no reference to § 2283, offering only the general conclusion that "injunctive relief is necessary so that the parties are not litigating in two places." (Dkt. 3-1, at 27). But this is precisely the result that § 2283 and cases such as *Atlantic Coast Line* contemplate.

IT IS ACCORDINGLY ORDERED this 15th day of April, 2011, that plaintiff's Motion for a Temporary Restraining Order (Dkt. 3) is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE