IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUNFLOWER BANK, N.A.,

                Plaintiff,

                vs.                Case No. 11-1104-JTM

RICHARD J. LUND; MARY ANN LUND; DENNIS
M. MASTRO; JANE MASTRO; MICHAEL D.
MASTRO; BRENDA L. MASTRO; JEFFREY J.
MASTRO; JODI L. MASTRO; DAVID R.
SELLERS; SCOTT A. TROILO; PATRICIA
SELLERS; AND LGE CORPORATION,

                Defendants.


MEMORANDUM AND ORDER


Plaintiff Sunflower Bank has brought the present action to enforce the 2010 Guaranty agreements of the defendants, residents of the State of Arizona. The parties executed these Guarantys to aid in financing a loan for land development in Arizona. The court has previously denied Sunflower's motion to enjoin a declaratory judgment action advanced by the defendants in Arizona state court. (Dkt. 18).

The matter is now before the court on four motions to dismiss advanced by individual defendants (with separate motions by Mary Ann and Richard Lund (Dkt. 43, 45)) or groups of defendants (with motions by the Mastro and LGE Corporation groups (Dkt. 34, 41)). Accompanied by individual affidavits stating their surprise at the present litigation, the defendants argue that personal jurisdiction does not exist in Kansas, that the court should abstain from hearing

Sunflower's claims, and that for reasons of convenience, the court should transfer the action to the United States District Court for the District of Arizona.

For the reasons provided herein, the court finds that the defendants' motions should be denied.

***The Original Loan***

The present action arises from debts incurred by an Arizona real estate venture, Dove Valley LLC. In 2007, Richard Lund, on behalf of Dove Valley, contacted Judith Chandler, President of First Eagle Lending Company, located in Scottsdale, Arizona, to obtain financing for the acquisition and development of real property.

On December 13, 2007, the First National Bank of Olathe ("First National Olathe") issued a $9.1 million loan to Dove Valley, receiving in return a promissory note (Note). Dove Valley is a single purpose entity formed to buy, build, or manage commercial real estate financed and acquired with the proceeds from the 2007 note. To secure the Note, Dove Valley gave the bank a Deed of Trust for certain real property located in Scottsdale. First Eagle and First National Bank of Scottsdale ("FNB Scottsdale") were also involved in the loan.

First National Olathe is a national banking association with a principal office in Olathe, Kansas. First National Olathe also maintains a loan production office in Scottsdale, Arizona. That branch office accepts applications for loans and arranges for business financing, but does not take deposits or provide any retail banking services.

To provide additional security for the Dove Valley loan, First National Olathe also received guaranties from Richard J. Lund, Mary Ann Lund, Dennis M. Mastro, Jane Mastro, Michael D.

Mastro, Brenda L. Mastro, Jeffrey J. Mastro, Jody L. Mastro, Scott A. Troilo, David R. Sellers, Patricia Sellers, and LGE Corporation (collectively Guarantors) as to all debts of Dove Valley.

Mastro Properties, LLC owns a 70% membership interest in Dove Valley. Michael D. Mastro, Jeffrey J. Mastro, and Dennis M. Mastro are the sole members of Mastro Properties, LLC. Thus, Michael D. Mastro, Jeffrey J. Mastro, and Dennis M. Mastro, together with their respective spouses, Brenda L. Mastro, Jodi L. Mastro, and Jane Mastro, collectively own a 70% interest in Dove Valley.

Dove Partners, LLC, formerly known as LGE/Biltmore Dove, LLC, owns the remaining 30% membership interest in Dove Valley. LGE Corporation is the managing member of Dove Partners, LLC. Scott Troilo is a shareholder of LGE Corporation. Thus, Scott Troilo has an economic interest in Dove Valley.

The Guarantors are all citizens of the State of Arizona.

The defendants aver that they were not aware that First National Olathe operated in Kansas, and that all of their contacts as to the original loan occurred at First National Olathe's Scottsdale office. The loan and guaranties were executed in Arizona.

Chandler remained the principal contact for Dove Valley until 2009. Chandler was the President of FNB Scottsdale, and was a former president of First Eagle in Arizona. She also had worked as Executive Vice President of First National Olathe for sixteen years.

The original guarantys were absolute and unconditional guaranties, meaning that upon the occurrence of a default, First National Olathe could immediately sue the Guarantors, without filing a prior suit against Dove Valley, or holding a trustee's sale for the Arizona real estate.

The Note required payments to be made to First National Olathe at its office in Olathe, Kansas, and required all notices and communications to be sent to Olathe. The Note also contained a Kansas forum selection clause, designating Johnson County, Kansas as the exclusive forum in the event of a dispute, further providing that Kansas law governs the Note. The guaranty agreements contained similar forum selection and governing law language

Dove Valley's representatives had approximately 25 meetings in Arizona with First National Olathe personnel. Dove Valley dropped off almost all of its loan payments at the Scottsdale office.

According to Sunflower, the Guarantors knew their liability was absolute and unconditional. (Reinsch Aff. ¶ 15 & Ex. B attached thereto). They also knew and understood that First National Olathe's principal place of business was located in Olathe, Kansas. The Guarantors further knew and understood that this meant they were required to perform their contractual obligations in Kansas. In addition, the Guarantors waived reliance on any antideficiency statute, including the Arizona deficiency statute.[1]

*The Participation Agreement*

On February 18, 2008, First National Olathe entered into a Loan Participation Agreement with plaintiff Sunflower Bank, under which Sunflower purchased a 54.8365% participation interest in the Original Loan to Dove Valley. Sunflower is a national banking association with a principal

---

[1]The defendants correctly object that Reinsch cannot provide direct evidence for such a proposition, as he does not have personal knowledge of their subjective intentions. But the matter is before the court on the defendants' motions to dismiss, and the court must take all facts alleged by the plaintiff to be true, unless shown to be clearly contrary to fact. **[CITATION]** Reinsch's conclusions are not independently admissible as evidence, but, in each instance, the court finds that they are fair interpretations of the objective actions by the parties involved, and reasonable constructions of the objective language of the Guaranty agreements.

4

place of business in Salina, Kansas, and with 33 domestic offices located in Kansas, Colorado, and Missouri. First National Olathe, Sunflower, and certain other participating banks (collectively Bank Group) received their pro rata share of the payments made by Dove Valley under the Original Note.

Girard National Bank, located in Girard, Kansas, also purchased a participation interest in the Original Loan, and thereby became a member of the Bank Group.

Dove Valley and the Mastro Guarantors assert they were unaware of Sunflower's purchase of an interest in the loan. But by January 2010, they knew or should have known that a group of participating banks, including Sunflower, was involved in the Original Loan, because the Bank Group was specifically referenced in emails between First National Olathe officials and Jeffrey Mastro.

### The Renewal

In early 2010, Dove Valley had defaulted on its payments, and had committed other defaults under the terms of the loan. In addition, the 2007 Promissory Note was scheduled to mature on or about May 7, 2010. Dove Valley and the Guarantors refused to cure the defaults and rejected the Bank Group's proposals for renewing the Original Loan to Dove Valley. Instead, Dove Valley undertook to renegotiate the loan. Dove Valley conducted these negotiations with Lynn Cole, Senior Vice President of Special Assets for First National Olathe at its Scottsdale branch.

On March 3, 2010, Cole advised Dove Valley of Sunflower's position on renewal:

Sunflower Bank's position on this is we want Dec, Jan, Feb payments as well as all financials by 3/5/10. If we do not receive the payments and financials by 3/5110 then we recommend proceeding with foreclosure. We also recommend a conference call on Monday at 1:30pm CST to see if Borrower complied with payments and financials as well as our plan going forward.

The Mastro defendants contend that this email was the first time they became aware of Sunflower's participation in the loan. They state that "[e]ssentially all" of their dealings in the renegotiation occurred in Scottsdale, under the direction of First National Olathe.

On March 23, 2010, the Bank Group held a telephone conference, deciding it would not engage in any further negotiations with Dove Valley or the Guarantors, and that First National Olathe would immediately file suit against the Guarantors in Johnson County, Kansas. The banks also agreed that they no longer wished to conduct business with Dove Valley or the Guarantors, and that neither Sunflower nor any other Bank Group member would seek to renew the Original Loan. Rather, the Bank Group sought to terminate its relationship with Dove Valley and the Guarantors, unanimously resolving to sue the Guarantors on the Original Guarantys. On March 29, 2010, Donald R. Reinsch, Sunflower Senior Vice President, sent an email to the Bank Group confirming the group's "unanimous decision to immediately proceed with a Legal Action against the Guarantors seeking Judgment for the amount owed on the outstanding loan."

O March 30, 2010, Cole emailed Jeffrey Mastro: "I have an update for you. I was in Kansas last week and met with one of the participating banks and also have been in conversations with the other yesterday and today."

The Guarantors quickly learned that the Bank Group had unanimously resolved to file a lawsuit against the Guarantors in Johnson County, Kansas.

On April 6, 2010, Cole wrote Reinsch: "The Mastro's [sic] have requested and inquired a meeting with the bank group in person. They will host the group and/or go to where we tell them."

The next day, Reinsch wrote to Cole that Sunflower was willing to meet with the Guarantors, but only "so long as it is clearly understood that this will not in any way delay the filing of our

lawsuit." According to Reinsch, even though Sunflower agreed to a meeting with the Guarantors, Sunflower did not wish to conduct any further business with Dove Valley or the Guarantors.

On April 12, 2010, Jeffrey Mastro attempted to schedule a meeting with the Bank Group in Kansas by sending the following email to Lynn Cole:

> Lynn:  Any way May 3rd would work for a meeting? That week ended up not working. We could also go out there next week if that would help – we are ready to meet and finalize our deal. Also, I just want to reiterate that WE ARE AT THE TABLE and we want to resolve all of this without litigation. Litigation at this point will not help. We are trying to go to Kansas in an effort to AVOID litigation. Let me know. Thanks for trying to work this out.

It was Sunflower's understanding that Jeffrey Mastro requested the meeting on behalf of himself, Dove Valley, and the other Guarantors, in hopes that Sunflower and the rest of the Bank Group would agree to renew the Original Loan. Jeffrey Mastro is an attorney.

The Bank Group discussed Jeffrey Mastro's email and agreed to meet with Jeffrey and Dennis Mastro, along with any other Guarantors, at Sunflower's office in Salina. The Bank Group again unanimously agreed that they would not delay the filing of the lawsuit against the Guarantors in Johnson County, and that they would not seek to further any business relationship with Dove Valley or the Guarantors.

On April 20, 2011, Jeffrey Mastro and Dennis Mastro traveled to Salina, Kansas to meet with officials from Sunflower and the rest of the Bank Group. The meeting was at the Guarantors' request, and the meeting would not have been held had it not been for the Guarantors' request for a meeting in Salina, Kansas.

During the meeting, Jeffrey Mastro and Dennis Mastro demonstrated a willingness to cooperate with the Bank Group, and the parties reached a tentative agreement to renew the original loan.

Before, during, and after the meeting, it was Sunflower's understanding that Jeffrey Mastro was acting on behalf of himself, Dove Valley, and the rest of the Guarantors.

The Guarantors understood that, if the Original Loan was renewed, Sunflower would assume First National Olathe's position as lead lender, and new loan documents would be executed in favor of Sunflower. The Guarantors understood that this meant that all the renewed loan documents would require performance to be rendered to Sunflower in Salina, Kansas, and not First National Olathe in Olathe.

On April 23, 2010, Chris Yohe, Vice President for Sunflower emailed Richard Lund, Dennis Mastro, David Sellers, and Jeffrey Mastro from Salina with a final proposal from the Bank Group to renew the Original Loan. Chris Yohe advised that the deadline to respond to the proposal was April 28, 2010, and further advised that any questions should be directed to Sunflower in Salina.

On April 27, 2010, Jeffrey Mastro emailed Yohe in Salina, asking that the deadline to respond to the Bank Group's proposal be extended to April 30, 2010. Yohe agreed to the request.

On April 30, 2010, Jeffrey Mastro again emailed Yohe in Salina, asking for a further extension to May 4, 2010. Yohe agreed.

On May 3, 2010, Jeffrey Mastro emailed Cole at First National Olathe with a counter-proposal to the Bank Group's April 23 proposal. Cole forwarded the counter-proposal to Sunflower and the rest of the Bank Group.

On May 5, 2010, Reinsch emailed Richard Lund, Dennis Mastro, David Sellers, and Jeffrey Mastro with a final revised proposal, and stated that any questions should be directed to Sunflower in Salina.

The next day, Jeffrey Mastro emailed Cole with an executed, but revised, copy of the May 5 proposal. Mastro requested that Cole "get this to the bank group today." Among other changes, the May 5, 2010 proposal had been changed to designate Chicago Title in Phoenix, Arizona as the escrow agent for the transaction.

The Bank Group refused to agree to the appointment of an Arizona escrow agent, and required that Crawford County Abstract & Title Company, located in Girard, Kansas, serve as the escrow agent.

On May 7, 2010, Jeffrey Mastro sent the following email to Yohe in Salina

Just want to make sure you received the LOI yesterday and to see if acceptable and if we should send the interest payment for Dec. 13-May 7th today. Thanks.

The same day, Dove Valley and the Bank Group agreed on the terms for renewal of the loan. Under the renewal agreement, Valley was required to transfer the sum of $452,093, equal to twelve months of interest payments, to the escrow agent in Girard, Kansas. Monthly interest payments would be made to Sunflower in Salina by drafting the monthly interest due from the escrow balance. Dove Valley was required to transfer the sum of $200,000 to the Kansas escrow agent at the time of the actual renewal, as a principal reduction on the renewed loan. At the time of renewal, Dove Valley would also pay $22,295.00 to Sunflower, on behalf of the Bank Group,

Further, Dove Valley and the Guarantors were required to submit to Sunflower, on behalf of the Bank Group, updated financial statements, including personal financial statements, tax returns, K-1s and all schedules and a listing of all contingent liabilities and related entities and a schedule verifying liquidity. It was expressly noted that all terms of the proposal were subject to and contingent upon receipt and approval of these financials by the Bank Group. Dove Valley was

required to pay the accrued interest on the loan, from December 13, 2009 to May 7, 2010, in the amount of $182,361.00.

At closing, Dove Valley was required to pay to Sunflower, on behalf of the Bank Group, all expenses in connection with the renewal. After the closing, Dove Valley was required to submit to Sunflower, on behalf of the Bank Group, "a detailed development plan with specific timelines for constructing the proposed restaurant on the [Arizona] property."

In May 2010, the Mastro Guarantors emailed their personal financial statements to Lynn Cole of First National Olathe. The Mastro Guarantors intended Lynn Cole to forward the personal financial statements to Sunflower in Salina, and Lynn Cole immediately forwarded the same to Sunflower.

In their personal financial statements, Dennis Mastro, Michael Mastro, and Scott Troilo indicated that Jeffrey Mastro served as their attorney. This confirmed Sunflower's belief that Jeffrey Mastro was acting as an agent for all of the Guarantors.

On or about May 7, 2010, First National Olathe executed an Assignment of Deed of Trust and Loan Documents, in which First National Olathe assigned Sunflower the Original Note, Original Guarantys, and various other loan documents in connection with its Original Loan to Dove Valley. Sunflower thus became the owner and holder of the Original Note and Original Guarantys, along with all other loan documents between First National Olathe and Dove Valley and the Guarantors.

On May 10, 2010, Mark Schifferdecker forwarded an Escrow Acceptance Agreement from Girard, Kansas to Jeffrey Mastro, Richard Lund, Dennis Mastro, David Sellers, and others. The Escrow Acceptance Agreement appointed Crawford County Abstract & Title Company, located in Girard, Kansas, to serve as the escrow agent for the renewal loan. The next day, Jeffrey Mastro, on

behalf of himself, Dove Valley, and the other Guarantors, responded with comments, questions, and concerns related to the Escrow Acceptance Agreement.

On May 25, 2010, Jeffrey Mastro emailed copies of the Guarantors' bank statements and account statements to Chris Yohe in Salina, Kansas. The next day, Mastro emailed a development plan for the Arizona real estate to Yohe in Salina. On June 7, Mastro emailed Yohen to negotiate the terms of the Guarantys and other Loan Documents. Specifically, Mastro indicated that the "[Loan] Documents need to be subject to AZ law like we all originally agreed and since the property is located in AZ."

Yohe responded on June 8, stating: "The documents are subject to the laws of the State of Kansas as you previously agreed to by signing the original Note."

Between May and June 2010, Dove Valley and the Guarantors delivered all of the required information and financial statements to Sunflower in Salina, Kansas, after which Sunflower loaned Dove Valley $9,117,999.00 to renew the Original Loan.  Because of their substantial economic ownership interest in Dove Valley, the Guarantors received a direct benefit from Sunflower's renewal of the Original Loan.

In consideration of Sunflower's loan, Dove Valley made, executed, and delivered to Sunflower a Promissory Note, in writing, and by the terms of which Dove Valley promised and agreed to pay said amount, together with interest and other charges, in installments as set forth therein. The Note was signed by Michael D. Mastro and Jeffrey J. Mastro, as co-managers of Mastro Properties, LLC, the managing member of Dove Valley.

The Renewal Note requires payments to be made to Sunflower at Sunflower's office in Salina, Kansas, and requires all notices and communications to be given to Sunflower in Salina,

11

Kansas. The Note contains a Kansas forum selection clause, providing that, in the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Kansas. The Note also contains a Kansas choice of law provision, providing that Kansas law governs the Note.

In consideration of Sunflower's Loan, Dove Valley and Sunflower entered into a Term Loan Agreement, dated May 7, 2010, setting forth various terms, representations, warranties, conditions, covenants, rights, remedies, and other provisions relevant to the Loan evidenced by the Note and related Loan Documents. Specifically, the Loan Agreement identified Sunflower as the lender and required Dove Valley and the Guarantors to submit the following information and documents to Sunflower in Salina, Kansas:

a.   Within thirty days of filing the federal and state tax returns for Dove Valley and each Guarantor; and

b.   Within forty-five days of the end of each calendar year, financial statements of each Guarantor for the prior calendar year, including a balance sheet and statement of income and expenses, cash flow, sources and uses of cash, liquidity and contingent liabilities.

c.   Dove Valley was further required to provide, as required by Sunflower, written evidence to Sunflower of the progress of development of the Arizona real estate.

The 2010 Loan Agreement provides that it and all other Loan Documents are to be governed by the laws of the State of Kansas.

For the purpose of securing the repayment and performance of the Note, Dove Valley delivered to Sunflower a modified Deed of Trust dated May 7, 2010, for the Arizona Real Estate. In addition, Richard J. Lund, Mary Ann Lund, Dennis M. Mastro, Jane Mastro, Michael D. Mastro, Brenda L. Mastro, Jeffrey J. Mastro, Jodi L. Mastro, Scott A. Troilo, David R. Sellers, Patricia

Sellers, and LGE Corporation each executed and delivered to Sunflower a Guaranty Agreement, in writing, dated May 7, 2010. Sunflower relied on the Guarantys in extending the renewal loan to Dove Valley, and each of the Guarantors induced Sunflower to extend such credit. Each of the Guarantors represented to Sunflower that they had a direct and substantial economic interest in Dove Valley, and that they expected to derive substantial benefits from the renewal loan to Dove Valley.

The Guarantys stated:

> I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby.

The Guarantys required payments to be made to Sunflower at Sunflower's office in Salina, Kansas, and required all notices and communications to be given to Sunflower at its Salina, Kansas address. The Guarantys are absolute and unconditional Guarantys, meaning that upon the occurrence of a default thereunder, Sunflower can immediately proceed to file a lawsuit against the Guarantors, without first suing Dove Valley or holding a trustee's sale for the Arizona Real Estate. The Guarantors knew their liability under the Original Guarantys was absolute and unconditional. (Reinsch Aff. ¶ 82).

Under the Guarantys, the Guarantors waived reliance on any deficiency statute, including the Arizona deficiency statute. By executing the Guarantys, each Guarantor represented as follows:

> I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability.

The Guarantys contain a Kansas choice of law provision, providing that the Guarantys are governed by the laws of the State of Kansas. By executing the Guarantys, each of the Guarantors agreed to be bound by all the terms of the Note, including the forum selection clause contained in

the Note. By executing the Guarantys, each of the Guarantors further agreed to be bound by all the terms of the Loan Agreement and other Loan Documents, including the requirement that each of the Guarantors deliver personal financial statements and federal and state tax returns to Sunflower in Salina, Kansas.

Sunflower intended for the Guarantors to be bound by the forum selection clause contained in the Note. It was Sunflower's understanding that, by agreeing to be bound by all the terms of the Note, the Guarantors agreed to the forum selection clause contained in the Note. Accordingly, Sunflower believed that if it filed a lawsuit against the Guarantors, the lawsuit could be filed in Kansas and the Kansas court would have personal jurisdiction over the Guarantors.

When they executed the Guarantys, the Guarantors knew and understood that Sunflower was located in Salina, Kansas. The Guarantors further knew and understood that this meant they were required to perform their contractual obligations in Kansas.

In November 2010, Jeffrey Mastro mailed a compact disc to Chris Yohe in Salina, Kansas. The compact disc was received by Chris Yohe in Salina, Kansas, and it contained the federal and state tax returns for all the Mastro Guarantors and Dove Valley.

On November 16, 2010, Jeffrey Mastro emailed Chris Yohe at Sunflower to inquire whether he had received the compact disc in the mail in Salina, Kansas.

Before, during, and after Sunflower's Loan to Dove Valley, and from April 2010 to February 2011, Jeffrey Mastro, Dennis Mastro, and Richard Lund, on behalf of themselves, Dove Valley, and the other Guarantors, engaged in extensive communications with Sunflower in Salina, Kansas. These individuals collectively exchanged at least 64 emails, as well as numerous other phone calls and

14

letters, with Sunflower in Salina, Kansas, all of which specifically dealt with the negotiation, execution, or performance of the Guarantys and other Loan Documents.

***The Mastro Guarantors' Arizona Lawsuit and Dove Valley's Chapter 11 Bankruptcy***

Dove Valley has defaulted on the Renewal Loan in multiple ways, including its failure to (1) pay and discharge the 2010 ad valorem taxes on the Arizona Real Estate on or before the due dates; (2) furnish, or cause to be furnished, 2010 end-of-year financial statements for each of the Guarantors; (3) give Sunflower timely notice of the tax default; (4) develop the Arizona Real Estate in accordance with the terms of the Development Plan; and (5) provide written evidence to Sunflower as to Dove Valley's progress under the terms of the Development Plan. Because of these defaults, on April 1, 2011, Sunflower accelerated maturity of the entire balance, together with interest thereon and fees, costs, and expenses, under the Note. The same day, Sunflower's outside legal counsel sent the Guarantors written notice of default, acceleration, and demand for payment.

On April 8, 2011, legal counsel for the Mastro Guarantors sent Sunflower's outside legal counsel a written response to the April 1, 2011 Demand Letter.

On April 11, 2011, Sunflower filed the present action, seeking to collect the approximate $9 million outstanding principal balance, plus interest, fees, costs, and expenses. Sunflower learned the following day that the Mastro Guarantors had filed a Complaint in Maricopa County, Arizona Superior Court. Sunflower has filed a Motion to Dismiss the Arizona case.

On April 22, 2011, Dove Valley filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

15

In the Motion for Summary Judgment, the Mastro defendants stress that they are long-term Arizona residents, who have never (or rarely) been to Kansas. Defendants Brenda, Jane, and Jodi Mastro state they have no direct or indirect ownership interest in Dove Valley. These defendants along with Michael Mastro and Scott Troilo were not involved in the negotiations for the loan renewal. All of the Mastro defendants aver that they did not think by signing the guaranties they were submitting themselves to jurisdiction in Kansas.

The LGE and Lund defendants generally adopt the arguments and facts advanced by the Mastro defendants. (Dkt. 44, at 1-2). The Lunds also stress that they have never been personally in Kansas, and that they signed the Guarantys in Arizona. The LGE defendants state that neither LGE corporation or either of the Sellers was a member of Dove Valley. David and Patricia Sellers are shareholders of LGE. David is LGE's Treasurer and Patricia is LGE's Secretary. They state that they "were uninvolved and removed from LGE's day-to-day operations" in 2010, and "have no first-hand knowledge about the status of the Dove Valley Project." (Dkt. 42, at ¶ 5).

### Conclusions of Law

### Choice of Law

The parties dispute which law is applicable in the present action. The Guarantys signed by the defendants provide:

> 14. APPLICABLE LAW. This Guaranty is governed by the laws of Kansas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

The choice of law provision thus provides that Kansas law governs the agreements, with Arizona law being applicable only "to the extent required."

16

The court finds nothing in the circumstances of the case "requires" the application of Arizona law.  Under Ariz. Rev. Stat. § 33-814(C), a Guarantor's obligation "may be enforced, if the person has so agreed, in an action regardless of whether a trustee's sale is held." Accordingly, the Guarantors were empowered by Arizona law to unconditionally waive the right to a trustee's sale. *See Crown Life Ins. Co. v. Howard*, 822 P.2d 483, 486 (Ariz. App. 1991). The evidence establishes that such a waiver occurred. The defendants agreed to such unconditional liability:

> 4. UNCONDITIONAL LIABILITY. I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other make, surety, Guarantor or endorser of the Debt or against any Property.

Arizona law therefore does not compel any contrary result, and the court finds that the Guarantys require the application of Kansas law only, as a reflection of the parties effective and voluntary choice. *See Black & Veatch Constr. v. ABB Power Generation*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000).


**Forum Selection**

Sunflower contends that, pursuant to the agreements between the parties, Kansas is the exclusive forum for disputes between the parties. The defendants contend that, because the forum selection is found only in the Note rather than in the individual Guaranty executed by each Guarantor, the agreements do not justify maintenance of the present action in Kansas.

Ordinarily in diversity actions, the court uses federal law to determine that application of a forum selection clause. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). To decide if a given selection clause is a part of the agreement between the parties, however, the court examines the scope of the agreement under state law. *Black & Veatch*, 123 F. Supp. 2d at 572. As noted earlier,

17

the Guarantys explicitly provide that Kansas law governs their interpretation. Accordingly, Kansas law determines whether the forum selection clause should be deemed a part of the agreement between the parties.

The court finds that the Guarantys are subject to the forum selection clause of the underlying Note. Paragraph 19 of the Note provides, as to the "Applicable Law," that "[i]n the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Kansas, unless otherwise required by law."

Paragraph 2 of the Guarantys signed by the defendants provide that, for good consideration,

I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that [Dove Valley] either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you....

The term "Debt" is capitalized as a specialized term, and is indeed duly and explicitly defined by the Guarantys to include: "A promissory note or other agreement, No. xxxxx5632, dated May 7, 2010, from DOVE VALLEY SCOTTSDALE, LLC (Borrower) to you, in the amount of $9,117,999.00."

By its express terms, therefore the Guarantys subject the defendants to abide by the terms of the Note, including its forum selection clause.

The Guarantors raise several arguments against such a result. First, they stress that the 2010 Renewal Loan Guarantys do not include a separate forum selection clause, unlike the guarantys to the original loan, and infer from this that the parties intended not to adopt exclusive jurisdiction in Kansas. This argument fails for two reasons.

First, the original loan documents were prepared by another bank, FNB Olathe, not the plaintiff Sunflower Bank. Accordingly, any such inference as to what the parties might have

18

intended is highly attenuated. When it assumed the primary role in representing the banks, Sunflower may have simply decided that an extra forum selection clause in the Guarantys was surplusage, given that the Guarantors were independently agreeing to all the terms of a Note, which explicitly included such a forum selection clause.

Second, and more important, the defendants' argument seeks to create ambiguity where none exists. The contractual language itself is clear and unambiguous, with the Guarantors agreeing to abide by the terms of the Note, which includes a clause providing for exclusive venue in Kansas. Where, as here, the parties have adopted language which is "plain, complete and unambiguous, the intention of the parties must be gathered from the language and that language alone." *In re Johnson*, 105 B.R. 661, 665 (Bankr. D. Kan. 1989).

Alternatively, the Guarantors argue (Reply at 20-23)  that Sunflower's quotation of the Guarantor's obligation is too narrow, and that they were only agreeing that disputes between Dove Valley and Sunflower would be resolved in Kansas. The court finds that nothing in the context of Paragraph 2 of the Guarantys provides for such a result. As noted earlier, the Guarantors agreed to provide by "all terms" in the underlying note, and one of those terms is that Kansas is the exclusive forum "[i]n the event of a dispute." The forum selection clause is binding on the defendants. *See Dealers Leasing v. Intercoastal Express*, 2010 WL 5093761 (D. Kan. 2010).

Finally, the defendants rely on averments that they did not subjectively intend to subject themselves to Kansas jurisdiction when they executed the Guarantys. But an agreement to litigate in a specific forum cannot be later thwarted by the expediency of asserting a contrary subjective intention. *See Streit v. Snap-On Equipment, Inc*., 2010 WL 5058540, *2 (D. Kan. 2010). The terms of the Guarantys, and the linked terms of the Note with its express forum selection, are binding, and

cannot be varied by an alleged failure to subjectively understand the import of the agreement. *See Rosenbaum v. Texas Energies*, 736 P.2d 888, 891-92 (Kan. 1987).

The terms of the selection clause were effectively incorporated into the Guarantys, and enforcement of the clause is not unreasonable. *Electronic Realty Associates, L.P.*, 897 F. Supp. at 522-23. While the guarantors may indeed suffer some inconvenience by defending this action in Kansas, such a result by itself does not authorize ignoring the agreement of the parties. *Double A. Home Care v. Epsilon Systems*, 15 F.Supp.2d 1114, 1117 (D. Kan. 1998).

***Personal Jurisdiction***

In addition, the court finds that, even in the absence of the forum selection clause, the present action may be properly maintained in Kansas.

In determining whether personal jurisdiction exists, the court applies the law of the forum state. *Marcus Food v. Crown Meat*, 779 F.Supp. 514, 518 (D.Kan.1991). The court must resolve the defendants' motions by determining whether Sunflower has made a *prima facie* showing of personal jurisdiction. *AST Sports Science v. CLF Distrib'n.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008) (plaintiff's burden at preliminary stage of litigation is light). Further, the court accepts as true all of the plaintiff's allegations which are uncontroverted by the defendants' evidence. *Ten Mile Indus. Park v. Western Plains Services*, 810 F.2d 1518, 1524 (10th Cir. 1987). The court resolves any conflicts of fact in favor of Sunflower. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Personal jurisdiction over the defendants exists if the action is authorized by Kansas law, and the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment. *Trujillo v. Williams*, 465 F.2d 1210, 1217 (10th Cir. 2006). However, because the Kansas long-arm statute has been interpreted to extend to reach as broadly as due process allows, the court may proceed directly to the due process inquiry. *Federated Rural Elec. Ins. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. l994);

Due process requires that a non-resident defendant had sufficient contacts with Kansas to reasonably anticipate being haled into court here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). In addition, the plaintiff must show that the exercise of jurisdiction does not offend

21

traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

The court finds that the defendants are subject to personal jurisdiction in Kansas, as the circumstances of the case demonstrate that the defendants purposefully engaged in commercial activities with Kansas financial institutions, and that Sunflower's alleged damages flow from these Kansas-related financial dealings. *See, e.g., Employers Mut. Cas. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1161 (10th Cir. 2010).

The evidence submitted to the court creates a prima facie case that the Guarantors voluntarily entered into guaranty agreements with a Kansas bank in order to encourage that bank to fund a real estate venture in which the defendants have an economic interest, either direct or indirect ownership in the borrower, or by close family relationship with another Guarantor with such an ownership interest. The primary original lender, First National Bank of Olathe, is clearly denominated by name in the original 2007 Guarantys, and its address is listed as a post office box in Olathe, Kansas. As noted earlier, the original Guarantys explicitly provided that the agreements were to be interpreted according to Kansas law, and provided that Kansas was the exclusive forum in the event of a lawsuit.

The Renewal Guaranty executed by the defendants explicitly provided that the lender is Sunflower Bank, located at a specific street address in Salina, Kansas. It also provided that the Guaranty was governed by the law of Kansas. As discussed earlier, although the 2010 Guarantys do not include a specific forum selection clause, their broad agreement to abide by all the terms of Dove Valley's Note are fairly construed to incorporate such a commitment. The lender's signature line indicates that the agreement will be signed by "Don Lamb, Sr Vice President - Salina." Finally,

each page of the 2010 Guaranty agreement contains a footer which identifies the Guarantor by name, identifies the document as a "Kansas Guaranty" and provides an identification number for the Guaranty which is prefixed by "KS/."

The defendants contend that the 2010 refinancing occurred at the instigation of Sunflower, and allege generally in their affidavits that they conducted few communications with Kansas, and could not reasonably have anticipated being subject to litigation in Kansas. The court finds that a reasonably prudent guarantor would have understood that by executing the 2007 and 2010 Guarantys — which explicitly identify the lender as a Kansas bank, with a Kansas address, creating an agreement that is subject to Kansas law, and which explicitly or by incorporation included a provision for exclusive Kansas jurisdiction —  the Guarantor was subjecting himself or herself to jurisdiction in Kansas.

Further, despite their current statements disclaiming any knowledge or interest in Dove Valley, each of the defendant Guarantors explicitly and individually agreed that the Kansas bank would rely on the Guaranty in loaning money to the Borrower, Dove Valley, and further agreed:

> I have signed this Guaranty to induce you to extend such credit. *I represent and warrant to you that I have a direct and substantial economic interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby....* You may rely conclusively on a continuing warranty that I continue to be benefitted by the Guaranty, and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature  or value of any such benefits.

(Guar. ¶ 13) (emphasis added).

The defendants also suggest that the course of dealing between the parties, such as the delivery of payments and the sending of communications to FNB Olathe's Scottsdale branch office,

demonstrates that they believed they were only acting in Arizona. The court finds that this course of dealing does not demonstrate the absence of minimum contacts with Kansas.

First, the specific instances of localized course of dealing cannot vary the express terms of the Guaranty agreements, which provide that the Guarantors were formally and explicitly agreeing that they were undertaking their obligations in order to induce a Kansas bank to extend credit. Second, the payments or communications identified by the defendants may have been permitted by the lenders as an accommodation, but the lenders never waived their right to expect performance in Kansas, and repeatedly undertook to remind the Guarantors that communications should be addressed to Kansas.

Moreover, the entire course of dealing between the parties confirms the existence of minimum contacts between the defendants, such that they might reasonably anticipate being haled into court in Kansas. Notwithstanding the defendant's claim that Sunflower somehow initiated the 2010 loan renewal, the uncontroverted facts show that Dove Valley was clearly in default by 2009, and that the lending group, including Sunflower, had decided to initiate litigation to foreclose on the property and the commitments of the Guarantors. The lenders were dissuaded from doing so only by the active efforts of the defendants to undertake new obligations in 2010. These efforts included repeated communications being sent to Sunflower in Kansas, and, ultimately, travel by some of the Guarantors, acting apparently on behalf of all of the defendants, to Kansas to further negotiations for the loan renewal.

In addition to their other arguments, the defendants also contend that while Jeffrey and Dennis Mastro may indeed have traveled to Kansas in 2010, they had no apparent authority to bind the other Guarantors as to the existence of minimum contacts. The court finds this argument is

24

unsupported in the record. First, the evidence of the plaintiff is persuasive that Jeffrey and Dennis Mastro did indeed appear to be acting on behalf of all the Guarantors. Given Jeffrey Mastro's status as attorney and his previously acting in that role on behalf of other defendants, Sunflower was not wrong in concluding that the Jeffrey and Dennis Mastro appeared to be acting on behalf of all of the defendants, especially given the close business and family relationships among the defendants. Moreover, the court notes that defendants have avoided directly averring that they had no knowledge of the renegotiation efforts led by Jeffrey and Dennis. Such an allegation which would be dubious, given that those negotiations ultimately led to similar Renewal Guaranty agreements among *all* the defendants, and the additional fact that — despite facing substantial liability on the 2007 Guarantys — none of the other defendants attempted any independent negotiations on their own behalf. The court finds that the 2010 renegotiations efforts by Jeffrey and Dennis Mastro appeared to be undertaken on behalf of all the defendants. *See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226, n. 5 (3rd Cir. 1992)

The evidence establishes that the defendants engaged in contractual negotiations and relations with the plaintiff Kansas bank  for the purpose of inducing that bank to issue credit to the borrower, Dove Valley, which each defendant affirmatively represented as an entity in which "I have a direct and substantial economic interest," and further warranted that they "expect to derive substantial benefits" from the renegotiated loan. (Guar., ¶ 13). These negotiations included some 64 emails from Arizona and Kansas. As a requirement for the renegotiated loan, the Guarantors were required to and did submit new financial statements and tax returns to Sunflower in Kansas. Over the initial objections of the Guarantors, Sunflower insisted on that the initial escrow payment on the renegotiated loan be made through a escrow agency in Kansas.

Given all of the facts of the case, the court finds that the defendant Guarantors had sufficient contacts with plaintiff in Kansas to satisfy due process requirements. For their own economic benefit, the defendants purposefully availed themselves of the benefit of Kansas laws by entering into guaranty contracts, governed by Kansas laws, designed to induce the plaintiff Kansas bank to loan money from Kansas. These contacts are not unrelated to the plaintiff's cause of action, but are integrally connected to it. The defendants acknowledged that the Guarantys were made with the intent to induce Sunflower to issue credit to Dove Valley, and the evidence is uncontroverted that Sunflower did in fact rely on those Guarantys in granting the renegotiated loan.

The court also finds that the exercise of personal jurisdiction in Kansas is reasonable. Under the circumstances of the case, the defendants could reasonably foresee that a refusal to comply with their guaranty obligations could work an injury to the plaintiff in Kansas. *See Burger King*, 471 U.S. at 480. While the defendants may be burdened by defending the present action in Kansas, this must be balanced against both the injury to the plaintiff in this state, and the agreement between the parties establishing Kansas as the only proper venue in the event of litigation.

### *Abstention*

The defendants argue that, even if the court has personal jurisdiction, it should abstain from exercising in under the doctrines articulated in *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Under the former, a federal court must, in the absence of extraordinary circumstances, decline to exercise jurisdiction in the face of ongoing state proceedings addressing matters traditionally reserved for state courts. Under the latter, discretionary doctrine, the federal court may stay an action where parallel state proceedings

suggest prudential reasons to sideline the federal action. The court finds that neither doctrine supports a stay of the present action.

*Younger* abstention requires three elements: (1) ongoing state proceedings, (2) the existence of an adequate state forum for resolving the case, and (3) that the subject of the action touches on important state interests, matters traditionally matters of separate state policies and laws. *Amanatulla v. Colo. Bd of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999). Here, defendants' argument clearly fails as to this final element.

The defendants argue, without citation, that mandatory *Younger* abstention exists because the case involves an Arizona borrower and Guarantors, and the underlying real estate is located in Arizona. But Kansas has equivalent interests. The agreements here were explicitly made subject to Kansas laws, were entered into with a Kansas business, and involved the issuance of funds from Kansas and the creation of an alleged injury in Kansas. More importantly, while the preference of the defendants for an Arizona venue is understandable, nothing about the present case, which involves a multi-state commercial banking transaction, is a matter which is traditionally resolved by reference to state law only. The case involves a common commercial transaction, not the sort of relatively rare proceedings for which federal jurisdiction would compromise the ability of state courts to effectively operate or enforce their own judgments. *See Brown ex rel. Brown v. Day*, 555 F.3d 882, 889 n. 5 (10th Cir. 2009).

Nor will the court stay the action under *Colorado River*. Such abstention is the exception rather than the rule, as federal courts have an obligation to exercise jurisdiction in the absence of exceptional circumstances. *See Moses H Cone Memo. Hosp. v. Mercury Construction*, 460 U.S. 1, 13 (1983). Such exceptional circumstances are not present here. Even assuming that the Arizona

action, which involves a declaratory judgment action brought by the Guarantors, is indeed parallel to this lawsuit, abstention is not supported in the absence of the (nonexclusive) factors enumerated in *Colorado River* and *Moses H. Cone*. These factors include (1) whether the state court has assumed jurisdiction over disputed property, (2) relative convenience to the federal forum, (3) the interest in avoiding piecemeal litigation, (4) the order in which the cases were filed, (5) the potentially vexatious nature of the litigation,(6) whether federal law provides the rule of decision, and (6) the adequacy of the state court proceeding to protect the federal plaintiff's rights.

These factors do not provide a substantial basis for the court to decline its general obligation to take up cases within its jurisdiction. No real property is involved here, as Sunflower is suing on the independent and unconditional obligations of the Guarantors. While the Guarantors may be inconvenienced by defending this action in Kansas, abstention would merely shift the inconvenience to the plaintiff to proceed in Arizona and would, in addition, reallocate the burdens of venue in a manner contrary to that agreed to by the parties. Kansas law governs the obligations of the parties. Finally, while the Arizona action was filed prior to this case, this provides no substantial basis for staying the action, as the timing of the Guarantors' Arizona action — just one day prior to the deadline for cure extended by the plaintiff — demonstrates that that action has no long-standing advantage over this litigation, and likely was an effort to forestall plaintiff's inevitable attempt to enforce its contractual rights to venue in Kansas.

### *Transfer*

Finally, the defendants argue that the court should transfer the case to Arizona pursuant to 28 U.S.C. § 1404(a). However, transfer under § 1404 requires, as a threshold matter, that the court

determine that foreign law applies to the litigation. *Gschwind v. Cessna Aircraft*, 161 F.3d 602, 605 (10h Cir. 1998). As noted earlier, the court finds that Kansas, rather than Arizona, law governs the scope of the parties duties under the Guarantys. And even if this were not the case, the factors supporting transfer do not establish that Arizona is a more convenient forum. As noted earlier, maintenance of the action in Arizona would simply shift the inconvenience between the parties. More importantly, the Guarantys are subject to a valid and enforceable forum selection clause providing for exclusive venue in Kansas, and the court should give effect to this agreement in preference to *post hoc* attempts to alter that agreement. *See Heller Financial v. Midwhey Powder,* 883 F.2d 1286, 1293 (7th Cir. 1989) ("a valid forum-selection clause may waive a party's right to assert his own inconvenience as a reason to transfer a case").

Pursuant to § 1404(a), the court makes an individualized, case-specific determination as to the convenience and fairness of alternative venues. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Although not dispositive by itself, the presence of a valid forum selection clause "will be a significant factor that figures centrally in the district court's calculus." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). *See also King v. PA Consulting Group*, 78 F3d.Appx. 645, 646 (10th Cir. 2003) (forum selection clause does not "override or obviate the § 1404(a) inquiry," but such a clause is properly given  "a central role in weighting and balancing the many factors in the convenience calculus").

The court finds that none of the factors relating to § 1404(a) establish that Arizona will present substantially greater convenience to all the parties. The present case does not involve any direct action on the underlying Arizona real estate, but an action by the bank against the defendants based upon their independent and unconditional Guarantys. Under those Guarantys, Kansas law

governs the actions. Coupled with the mandatory forum selection clause, the court finds that transfer is not justified.

***Motion to Dismiss Sellers Guarantors***

In addition to seeking dismissal of the action in Kansas on grounds of jurisdiction and venue, the Sellers defendants also seek to dismiss Sunflower's claims against them under Fed.R.Civ.Pr. 12(b)(6), on the grounds that they did not undertake to guarantee the loans as individuals. In particular, the Sellers stress that the Guaranty agreement, after identifying the Lender as Sunflower and Borrower as Dove Valley, provides:

> **Guarantor:**
> LGE CORPORATION
> a Corporation
> [Street Address]
> PHOENIX, AZ  85008

The Guaranty does not list them as individuals in the initial listing of parties to the agreement. However, there are three indications that the agreement was intended to reach more broadly than simply the corporation itself. First, the Guaranty provides three separate signature lines for the Guarantor: one for "DAVID E. SELLERS, PRESIDENT," a second for "DAVID E. SELLERS, INDIVIDUALLY," and a third for "PATRICIA SELLERS, INDIVIDUALLY." David and Patricia Sellers signed as indicated.

Second, operative provisions of the Guaranty do not commit the "Guarantor" to provide the specific promises included in the document. Rather, each undertaking is a commitment made by use of the first person pronoun. Thus, Paragraph 2 provides that for good consideration made, "I

absolutely and unconditionally agree to all terms and guaranty to you the payment and performance of each and every Debt...." Paragraph 4 acknowledges that "I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower...." Paragraph 13 states that "I acknowledge to you that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit." These are some of the most important promises, but the Guaranty includes dozens of specific promises, all advanced by "I," rather than "Guarantor."

Third, the Definitions portion of the Guaranty specifically provides:

**A. Pronouns.** The pronouns "I", "me" and "my" refer to *all persons* or entities *signing this Guaranty, individually* and together. "You" and "your" refer to the Lender.

(Italic emphasis added.) As noted earlier, David and Patricia Sellers separately signed the Guaranty "INDIVIDUALLY."

Whether or not the agreement actually imposes liability on the Sellers as individuals is not in issue at this time. The court may grant a Motion to Dismiss under Rule 12(b)(6) only if the face of the plaintiff's Complaint fails to set forth any plausible basis for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the Sellers would be entitled to relief at this stage of the litigation only if they could establish beyond a reasonable doubt that the Guarantys unambiguously excluded them from individual liability. Given the cited language in the agreements signature lines, operative language, and definitions, this is not the case.

IT IS ACCORDINGLY ORDERED this 28th day of September, 2011, that the defendants'

Motions to Dismiss, Abstain, or Transfer (Dkt. 34, 41, 43, 45) are denied.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE